## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GENEVA TANN**<br>7400 Riverhill Road<br>Oxen Hill, Maryland 20745 | **Civil Action No.:  1:21-cv-2993** |
| Plaintiff, | |
| v. | **COMPLAINT AND**<br>**JURY TRIAL DEMAND** |
| **NUTRIBULLET, LLC,**<br>11601 Wilshire Boulevard<br>23rd Floor<br>Los Angeles, California 90025 | |
| and | |
| **CAPITAL BRANDS, LLC,**<br>11601 Wilshire Boulevard<br>23rd Floor<br>Los Angeles, California 90025 | |
| Defendants. | |

## COMPLAINT FOR DAMAGES

Plaintiff, **GENEVA TANN** (hereafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC**, and **JENNER LAW, P.C.,** hereby submits the following Complaint and Demand for Jury Trial against Defendant **NUTRIBULLET, LLC.** (hereafter referred to as "Defendant Nutribullet"), and **CAPITAL BRANDS, LLC,** (collectively referred to as "Defendants"), and alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1.    Defendant Nutribullet, LLC ("Defendant NutriBullet") and Defendant Capital Brands, LLC ("Defendant Capital Brands") design, manufacture, market, import, distribute and sell

consumer products such as blenders marketed under the NutriBullet and MagicBullet brand names, amongst other brands, which specifically includes the NutriBullet Model Number NB-201Blender (referred to hereafter as "NutriBullet blender(s)").

2.      The NutriBullet blenders are defectively designed and manufactured, in that, the extremely fast-moving blade of the blenders heat the contents of the sealed bullet-shaped canister, which can (and does) unexpectedly explode when being used in its normal and intended manner by consumers. Consumers use the NutriBullet blenders without knowledge of the inherent risks. In a matter of short amount of time, the fast-spinning blades can unexpectedly heat up its contents, such that if the blender explodes, the user is at risk of severe burns and injuries requiring medical attention. The NutriBullet blenders pose a safety risk to consumers and other individuals who may be in close proximity to the NutriBullet blenders when it explodes.

3.      The NutriBullet blenders have been the subject of numerous lawsuits around the nation for similar experiences and injuries as those suffered by the Plaintiff in this case.

4.      Defendants knew or should have known of these defects, but has nevertheless put profit ahead of safety by continuing to sell its Nutribullet blenders to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective Nutribullet blenders regardless of the risk of significant injuries to Plaintiff and consumers like her.

5.      Defendants ignored and/or concealed its knowledge of these defects in its Nutribullet blenders from the Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said Nutribullet blenders, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and consumers like her.

6.      As a direct and proximate result of Defendant's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, wage loss, physical pain, mental anguish, and diminished enjoyment of life.

## THE PARTIES

7.      Plaintiff Geneva Tann (hereinafter Plaintiff or "Ms. Tann") is a United States citizen currently residing at 7400 Riverhill Road, Oxon Hill, Prince Georges County, Maryland.  At the time of the subject incident, Plaintiff resided at 3923 Clay Place, N.E., Washington, D.C.  20019.

8.      Defendant NutriBullet, LLC is a California domestic limited liability company with its principal place of business in Los Angeles, Los Angeles County, California. Defendant NutriBullet, LLC is a wholly owned subsidiary of Capital Brands, LLC. At the time of Plaintiff's injuries on November 21, 2018, each of Defendant NutriBullet, LLC's managers, members and agents operated out of Defendants' principal place of business at 11601 Wilshire Boulevard, 23rd Floor, Los Angeles, California 90025, and said managers, members and agents were and are each citizens of the State of California. Specifically, at the time of Plaintiff's injuries on November 21, 2018, NutriBullet, LLC's sole member was Capital Brands, LLC. Its managers were Lenny Sands and Colin Sapire. Its agent for service of process was Mark Suzumoto.

9.      Defendant Capital Brands, LLC is a California limited liability company with its principal place of business in Los Angeles, Los Angeles County, California. Capital Brands, LLC is the parent company of Defendant NutriBullet, LLC. At the time of Plaintiff's injuries on November 21, 2018, each of Defendant Capital Brands, LLC's managers, members and agents operated out of Defendants' principal place of business at 11601 Wilshire Boulevard, 23rd Floor, Los Angeles, California 90025, and said managers, members and agents were and are each citizens of the State of California. Specifically, at the time of Plaintiff's injuries on November 21, 2018, Capital

Brands, LLC's sole member was Call to Action, LLC.  Its "managers" were Lenny Sands and

Colin Sapire.  At that time there were many persons who have varying levels of management and

agency authority (e.g., CEO, COO, CFO, CAO, CTO, CLO, vice presidents). Its agent for service

of process was Mark Suzumoto.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction

prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and there is complete diversity between the parties.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part

of the events or omissions giving rise to this claim occurred in this District.

12.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have

sufficient minimum contacts with the District of Columbia and intentionally availed itself of the

markets within through the promotion, sale, marketing, and distribution of its products

## FACTUAL BACKGROUND

### Case Specific Facts

13.     Around December 2015, Plaintiff purchased a new NutriBullet Model Number NB-201

Blender.

14.     On the early afternoon of November 14, 2018, Ms. Tann decided to prepare one of her

favorite recipes, a hot puréed rice soup, in her NutriBullet.  As she had done many times before,

she added the ingredients, twisted the cup into the start position and the NutriBullet began running.

15.     As she was twisting open the blade lid, it suddenly and unexpectedly exploded off of the

cup like a bullet. The soup base sprayed out onto the kitchen's walls, cabinets, counters, floors,

and ceiling. The scalding hot liquid also landed on Ms. Tann's chest and neck and covered her

arms all the way from her biceps down to her hands. Ms. Tann immediately felt an unbearable and excruciating pain as the soup burned her skin.

16.     Ms. Tann's father was at home working in his office at the time of the incident and heard the commotion coming from the kitchen. He came to check on her daughter, and when he saw how severely she had been injured he called 911 for an ambulance.

17.     An EMS crew from Prince George County Fire Department responded to a call for burns caused by an explosion and was dispatched to Ms. Tann's residence.

18.     During transit, Ms. Tann rated her pain level as a 10 out of 10. To help relieve her pain, EMT Dolby administered Fentanyl 50 mcg via IV. EMT Dolby described the burns as "large" (over 18% total body surface area), with blisters. The record statement reports Ms. Tann was successfully transported via ambulance to MedStar Washington Hospital.

19.     Physicians diagnosed her with 4.5% total body surface area (TBSA) burns consisting of mixed second and third degree burns over the right arm and mid chest, as well as first degree burns to the chin. Blisters had formed on the burns located on the chest.

20.     Surgeons performed wound excision and a xenograft skin graft application. They debrided Ms. Tann's wounds down to the level of bleeding tissue, then a xenograft skin graft was tacked into position with sutures.

21.     Ms. Tann was discharged on November 16, after several excruciating days in the hospital, but had to return days later for concerns of possible infection.  Ms. Tann's pain continued unrelentingly, and she was given additional Percocet and morphine.

22.     Ms. Tann's subsequent medical course, continuing through today, consisted of wound debridements, pain medications, occupational and physical therapy, multiple doctors' visits for

continued burn care, Kenalog (steroid) injections, laser scar revisions, and more.  She was forced to wear compression medical equipment to facilitate healing.

23.     Ms. Tann is left horribly disfigured.  In addition to the effects of her injury, its accompanying pain and suffering, and other economic and non-economic losses that she has endured to date; Ms. Tann continues to have discolored skin and raised Keloid scars on her right wrist, forearm, and bicep where the hot contents of the NutriBullet landed on her.

24.     Ms. Tann also experiences sensitivity and discomfort to her burn scars. Prior to the incident, she loved going on runs outside. Unfortunately, she now only goes on outdoor runs when the weather is cool or rainy because the heat and sun further irritate her burn scars.

25.     To date, she has undergone three separate Laser Therapy Sessions to improve the appearance, sensitivity, and texture of her scars. Her doctors have recommended that she continue to undergo Laser Therapy sessions to help with the severity of her raised Keloid scars. Additionally, Ms. Tann applies Aquaphor ointment and sunscreen daily, and she wears a sleeve over her arm and hand when she goes outside. She is forced to think of the traumatic NutriBullet incident every time she sees her burn scars.

26.     Ms. Tann's serious, substantial and permanent burn injuries, as well as past, present and future economic losses, were sustained as the direct and proximate result of the NutriBullet blender's plastic cup explosively separating from the blade base during the normal, directed use of the NutriBullet blender, allowing its scalding hot contents to be forcefully ejected onto Plaintiff. The incident occurred as the result of the NutriBullet Blenders defect(s), which allow the plastic cup of the NutriBullet blender to pressurize to the point that the canister separates from the blade base of the NutriBullet blender, causing the now hot contents of the NutriBullet blender, as well as the parts of the NutriBullet blender itself, to explode. Additionally, the incident occurred as the

result of Defendants' failure to warn and to redesign the NutriBullet blender, despite the existence of economical, safer alternative designs.

**General Liability Facts**

27.     Defendants tout that their NutriBullet blenders are high-powered blender and/or food processor, and are marketed as a "nutrient extractor" with "smart extraction technology":

> Nutrient extraction is the mechanism NutriBullet uses to break down fruits, vegetables, nuts, seeds, and other plant foods down to their most absorbable state. Unlike juicers and blenders, NutriBullet nutrient extractors break down the cell walls of fibrous plant foods, releasing important vitamins and minerals contained within. At the same time, they reduce beneficial fiber, pulp, seeds, and skins into smooth-as silk texture, delivering food to your body in an easily digestible form. More than juicing, more than blending, and more than chewing, nutrient extraction allows you to receive the highest degree of nutrition your food has to offer.[1]

28.     Defendants claims that "[t]he NutriBullet System is built to last, made from quality construction, and protected by a full one-year warranty"[2] and that its "secret" is "its powerful 600 Watt motor combined with Bullet exclusive cyclonic action that forces everything through the turbo extractor blades turning at an incredible 10,000 RPM."[3]

29.     NutriLiving.com houses the NutriBullet online store, where all models of NutriBullet Blenders, Superfood Blends protein powders, and accessories can be purchased. NutriBullet sells several different models, each with varying wattage, capacity, weight, and prices ranging from $59.99 - $179.99.

30.     According to a 2016 Forbes article, sales of the NutriBullet from 2012 to mid-2015 totaled 14 million units and the NutriBullet is the No. 1 best-selling countertop blender on Amazon.com.[4]

---

[1] See https://nutribullet.com/?gclid=Cj0KEQjwmIrJBRCRmJ_x7KDo-9oBEiQAuUPKMhTYN61agN3xTmNki_5JvhoAgdU34b_90u9r60yekh8aAqsv8P8HAQ (last accessed November 10, 2021).

[2] See https://www.youtube.com/watch?v=hfWHl8xnxV8.

[3] *Id.*

[4] *See* https://www.forbes.com/sites/hunteratkins/2016/02/29/blender-battle-how-nutribullet-made-vitamix-step-up/#49260bf86ac5 (last accessed November 10, 2021).

31.     In addition to sales via Amazon.com and NutriLiving.com, the NutriBullet is sold at retailers, including Bed Bath & Beyond, Costco, J.C. Penney, Kohl's, Macy's, Sears, Target, and Wal-Mart.

32.     Defendants currently or have previously manufactured, marketed, and distributed the NutriBullet Blenders, including the Baby Bullet, MagicBullet, Magic Bullet Express, MagicBullet Mini, NutriBullet, NutriBullet Pro 900 Series, NutriBullet 1000, NutriBullet 1200, NutriBullet Balance, NutriBullet Lean, NutriBullet Max, NutriBullet NB-101, NutriBullet Prime, NutriBullet Pro Rx, NutriBullet Rx, NutriBullet Select; NutriBullet Sport, NutriBullet University Pro, Party Bullet, and Veggie Bullet.

33.     All of the aforementioned NutriBullet blenders are substantially similar in design and manufacturing.

34.     Additionally, Defendants offer a one-year written warranty on its products with the option to purchase an extended warranty.

35.     Defendants warrant that its NutriBullet blenders will be free of defects in materials and workmanship for one year from the date of purchase. For example, the one-year limited warranty states that:

> At NutriBullet, LLC, we take pride in our products. We go out of our way to make products of superior quality and craftsmanship, products designed to meet or exceed the demands placed on them through everyday use. Because of this commitment to quality, we warrant the NutriBullet PRO to be free of defects for one full year (you may at your option extend this limited warranty for an additional 4 years by purchasing an additional limited warranty which shall commence at the end of the one year term). Here's the deal: If your NutriBullet PRO stops operating to your satisfaction due to defects in materials or workmanship, we'll gladly repair it or replace it for free (excluding shipping and processing charges).[5]

---

[5] *See* https://www.nutribullet.com/warranty (last accessed November 10, 2021).

36.     All NutriBullet blenders, including the NutriBullet Rx Model Number N17-1001 Blender that injured the Plaintiff, essentially have three components: a powered base unit which contains a high-speed motor ("power base"), a plastic cup-shaped container that holds ingredients to be blended ("cup"), and a plastic lid mounted with metal blades ("blade base"), which screws into the cup and is energized by the base.

37.     During the normal, as-directed use of a NutriBullet blender, a consumer puts cool or room temperature food into the plastic "bullet" cup. Once the cup is secured to the blade assembly and placed onto the unit's base, the user is able to run the blender by pressing down on the cup. The blades then rotate, creating friction as they cut and chop the cup's contents, which in turn causes the contents to heat up.

38.     As the temperature rises inside the cup, the pressure from the frictional energy also rises. The temperature can get so hot that the pressure inside the cup forces the cup to separate from the blade while the blender is still running. This can cause the hot contents of the cup to explosively project outward without warning, landing on anyone and anything nearby.

39.     Even if the cup does not separate from the blender while in use, the user is still at risk. If the contents of the cup are hot and under pressure when the cup is opened, the hot contents can again be explosively ejected onto the user, causing severe burns, as it did to the Plaintiff in this case.

40.     The NutriBullet blenders have been manufactured such that consumers cannot safely use them in the intended manner without risk of the NutriBullet blenders exploding which may result in physical injury or property damage.

41.     There is no pressure relief built into the plastic cup other than unscrewing the lid.

42.     Furthermore, there are no indictors for pressure build-up expect for resistance upon

twisting the lid. The consumer lacks any obvious way to judge the danger of or the amount of pressure and heat buildup without handling the cup directly, thereby exposing the consumer to the release of hot contents or the blade base itself.

43.     By reason of the forgoing acts or omissions, the above-named Plaintiff and/or her family purchased their NutriBullet blender with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of blending.

44.     Plaintiff used her NutriBullet blender for its intended purpose of preparing meals for herself and/or family and did so in a manner that was reasonable and foreseeable by Defendants.

45.     However, the aforementioned NutriBullet blender was defectively designed and manufactured by Defendants in that its plastic cup could explosively separating from the blade base during the normal, directed use of the NutriBullet blender, allowing its scalding hot contents to be forcefully ejected onto consumer such as the Plaintiff.

46.     Defendants NutriBullet blenders possess defects that make them unreasonably dangerous for their intended use by consumers because the plastic cup can explosively separate from the blade base.

47.     Economic, safer alternative designs were available that could have prevented the NutriBullet blender's plastic cup from explosively separating from the blade base. Examples of such designs include, but are not limited to, the following examples:

    a.  Designing the NutriBullet blender with pressure relief built into the plastic cup other than unscrewing the lid; and

    b.  Designing the NutriBullet blender with indictors for pressure build-up within the plastic cup.

48.     Defendants knew or should have known that its NutriBullet blenders possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendants continues to ignore and/or conceal its knowledge of these defects from the general public and continues to generate a substantial profit from the sale of its NutriBullet blenders, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and consumers like them. For example:

    a.  The Consumer Products Safety Commission has received several reports[6] of other similar incidents stemming from the failure of the NutriBullet Blenders:

        i.  October 28, 2011: ("On October 19th in the evening I was using the Magic Bullet to make my daughter some baby food. I have used this blender many times (10-15) in the past months as she just started eating table food. I cut up sweet potatoes into small square and put in two tablespoons of water along with the sweet potatoes into the tall cup. I attached the steamer lid and placed it in the microwave for three minutes. When the timer went off, I removed the lid stirred up the potatoes then place[d] the cross blade onto the cup. I then placed them on the base and blended the potatoes. I noticed they needed some more water to get the right consistency, so I removed the cup from the base. I banged the cup on the counter to get the sweet potatoes to slide down the cup so I wouldn't make a mess when I opened the lid. I started to unscrew the cross-blade attachment and it was giving me a hard time and all of a sudden I unscrewed, and the contents exploded in a six-feet radius around my kitchen and on myself…")

        ii.  December 28, 2012: ("I was using the Baby Bullet, baby food maker to puree some food for my 6-month-old daughter. I had only used it a few times. This was the third time. I had followed all of the manufacturer's guidelines on how to use and clean the device (hand wash, and top rack dishwasher safe). I was feeding my daughter her food and she was struggling with something in her mouth, so I reached in and pulled out a piece of plastic/silicone. This was from the units blade component….")

        iii.  February 13, 2013: ("I purchased a Magic Bullet blender from Costco about a month ago. Over the weekend I made a smoothie containing ice and frozen fruits, plus water. I served myself and a friend. My friend pulled out of his mouth an extremely sharp shard of plastic that he almost swallowed, about ¾ an inch in length, and maybe ¼ inch maximum width. Had he swallowed it, it caused defiantly caused perforation or tearing along the digestive tract…")

---

[6] The date listed is the date the report of injury was sent to the Defendants.

iv.  October 21, 2014: ("As I was making a smoothie a couple days ago (oct. 8th), a piece of the blade broke off the NutriBullet without my knowledge. I poured my smoothie into a glass and proceeded to drink it. A piece of the blade was in my mouth and thinking it was piece of strawberry I chewed it. If I swallowed it, I would have choked…")

v.  January 7, 2015: ("This caller purchased her blender system around the end of June/beginning of July 2014 time frame. She used it with problems until August 29th, 2014 when she was blending a shake mixture of fruits, vegetables and water when after less than four minutes it suddenly blew up…")

vi.  April 27, 2015: ("02/16/2016 – the consumer used her blender before she went to work. The consumer indicates that while the unit was blending her smoothie, she heard and unusual sound coming from it but did not think much of it. Though the consumer usually drinks her smoothie right from the blender glass, she was running late and had to place its contents in a mason jar. When the consumer was in her vehicle, she started consuming her drink via straw. At one point, she noticed no juice was coming from the straw even though the container was not empty. Believing that possibly a vegetable had gotten stuck, the consume proceeded to try to extract it with her hand. When the consumer got her hand out, it was actually one of the six prong blade that had broken off.")

vii.  June 26, 2015: ("I have the Nutribullet 900 Pro. I have enjoyed it however this week while making a protein shake (with mostly liquid and only about three ice cubes) [t]he blades broke off in my drink. I did not notice until after I drank my drink. Luckily, I did not ingest the blade. It was I the bottom of the cup.")

viii.  September 9, 2016: ("August 16, 2016 at approximately 5:00 pm I was making a smoothie that consisted of almond milk, ½ banana, peanut butter and ice. When the blade stopped. Which they usually [do] if I need to add more fluid, I went to take it off. Although the NutriBullet claims it can crush ice without liquid, this is not the case. I have found the blade stop frequently due to a lack of fluid and the blades being obstructed. As I went to remove the canister, pushing down and turning left, enough fluid hit the blade and they started. In the meantime, the cup was not secured tight enough to the blade and the cup began to dislodge from the blades and base. Part of my shake came up the side of the cup and my right hand slid on to the partial[ly] exposed blades. The blade continued to work because of at least one of the "nubs" stayed in the base until the cup became complete[ly] dislodged from the base. The trajectory of my shake and blood from my hand went across the kitchen a minimum of 10 feet and as high as approximately six feet. The injury was to my right pinky finger and the base/palm of that figure. I required 27 stiches.")

ix.  December 9, 2016: ("My wife was scaled using the Nutribullet blender. On November 27, 2016, she was making carrot soup. She sautéed the carrots with

onions and spices, added liquid, and simmered for approximately 30 minutes. She then removed the soup from the heat and let it cool before transferring it to the Nutribullet. She began blending the soup but heard a loud pop and the heated soup exploded violently from the unit. My wife has her hand on top of the cup. She managed to close her eyes before being hit by the liquid, but she had her hand on top of the unit, and she immediately felt severe burning on her face and arms. I took her to the hospital, where we spent hour[s] and she [had] several, largely ineffective, pain medications. She was then transferred via ambulance, to another hospital with a specialized burn clinic, where she finally received effective pain treatment. She was diagnosed with 1st-and 2nd-degree burns on her face and arm, including a 2nd-degree burn on her eyelid, and [was] prescribed medicated creams to apply to her burns. The doctors told her it will take her eyelid [sic] will likely require at least four months to heal.")

x.   March 13, 2017: ("(11/28/2016) The consumer stated that she was making a protein shake in the blender. When she turned it on, she heard a pinging sound which she thought was the ice cubes that she had placed in the blender. The consumer drank the shake and felt something toward the back of her throat. She was able to remove a piece of the blade [at] the back of her throat. The consumer looked at the unit and saw that the blade had cracked at the base and had come off. The broken piece was about an inch and a half long…")

xi.   April 3, 2017: ("I pureed soup in the NutriBullet 900 Series Blender. When taking off the lid of the blender, it exploded like a bomb and caused 1st and 2nd degree burns across my chest, arms, neck and face. I went to the ER immediately and they cared for my extensive burns. That was a week ago – since then, I've had to do daily wound cleaning and dressing changes (at the ER or a wound clinic or a nurse).)

xii.   January 8, 2018: ("The product is Magic Bullet blender. It explodes[d] while I was blending a coffee protein drink. It was a new replacement for an old one. This was the first use of the one. It splatted the contents. The cup and blade separated violently. This product should be removed from the market before there is serious injury.")

xiii.   January 10, 2018: ("The submitter said she was making a fruit smoothie and she had the blender on for about 10 seconds. She tired to open it but it was very difficult, and she indicated that it seemed like there was a lot of pressure inside. The submitter said after struggling for some time she was able to open it but the top exploded and hit her the chest. The submitter described the incident similar to opening champagne bottle. The submitter said the top flew hitting her in the chest and the content went everywhere. The submitter said [she] had pains in her chest but did not seek medical attention.")

xiv.  August 2, 2018: ("I was blending liquids and fruit, while pushing down on the cup to 'seat' and activate the unit, the cup exploded off the base, my hand hit the moving blade and was lacerated.")

xv.  October 4, 2018: ("Person was using the product to blend oatmeal to a smooth consistency. When she stated to open the blender cup by unscrewing the base the hot contents exploded out of the blender cup all over her kitchen and onto her face and body.")

b.  Several lawsuits have been filed in Courts throughout the United States alleging similar incidents as the one that injured the Plaintiff in this case:

i.  *Alta Hanlon v. Nutribullet, LLC, et. al*. (Filed in Lake County Circuit Court of the State of Indiana December 18, 2015, removed to the Northern District of Indiana on February 17, 2016) ("Plaintiff was inured as a direct and proximate result of the defective and/or unreasonably dangerous high speed blender, which was sold and provided with no on/off button by which to turn off the blender, leaving the only means to de-energize it to be to manually unplug it from an electrical outlet, and was sold and provided without a safety mechanism to render the machine inoperable to prevent the blade from being engaged without a cup over them, and was sold and provide without any adequate warning of dangers associated with its lack of a power switch or its ability to operate and power on itself and at high speed rotate the blade without a cup over them.") Pltfs. Compl., ¶ 6.

ii.  *Guylante Jules, et. al. v. Nutribullet, LLC et. al*. (Filed Circuit Court of the 11th Judicial Circuit in Miami Dade County, Florida, January 13, 2016, removed to Southern District of Florida, Miami Division, January 21, 2019) ("On July 22, 2014, ODEKVK JEUNE was using the Subject Blender making a recipe. At some point after ODERME JEUNE began using the Subject Blender, the Plaintiff minor, FUITON JEUNE, began to notice smoke coming from the Subject Blender. After FUITON JEUNE began to see to Subject Blender emanating smoke, he attempted to reach for the power cord to unplug the cord to turn off the Subject Blender. Before FUITON JEUNE could reach the power cord, the Subject Blender exploded, propelling the container with such force that it caused damage to roof immediately above it. After the Subject Blender exploded, it caused all of its hot contents to pour over and burn FUITON JEUNE'S 12-year-old boy and the injuries will be fully described below.") Pltfs. Compl., ¶¶ 8 - 14.

iii.  *Wendy Littlefield, et. al. v. Homeland Housewares, LLC et. al.* (Filed in the Central District of California, Western Division September 14, 2026) ("That on January 21, 2016, Plaintiff WENDY LITTLEFIELD attempted to use her NutriBullet 900, when it suddenly malfunctioned, causing severe injuries to Plaintiff WENDY LITTLEFIELD's right hand.") Pltfs. Compl., ¶ 12.

iv. *Judith Funk, et. al. v. Homeland Housewares, LLC et. al.* (Filed in the District of Kansas, November 2, 2016) ("That on January 16, 2015, Plaintiff JUDITH FUNK attempted to use her Magic Bullet, when the locking mechanism malfunctioned, causing injuries to Plaintiff JUDITH FUNK'S left hand"). Pltfs. Compl., ¶ 10.

v. *Brian K. Lyles v. Nutribullet, LLC,* (Filed in the Superior Court of New Jersey, Hudson County, November 2, 2016, removed to the District of New Jersey January 24, 2017) )"On Wednesday December 31st, 2014 Plaintiff was using the blender to make a beverage drink when the blender exploded sending hot liquid onto Plaintiff's left Arm burning and scarring it.") Pltfs. Compl., ¶ 4.

vi. *Kourtni Nicole Beebe v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, February 1, 2017) ("That on May 1, 2015, Plaintiff KOURTNI NICOLE BEEBE used her friend's Nutribullet 900, when it suddenly malfunctioned causing severe injuries to her hand.") Pltfs. Compl., ¶ 8.

vii. *Phyllis B. Cerrato, et. al. v. Nutribullet, LLC et. al*. (Filed in the Middle District of Florida, Tampa Division, February 1, 2017) ("On December 20, 2014, P. Cerrato was using the blender, when the blender began to emit smoke and exploded, causing hot liquids to severely burn her face and upper body and further causing property damage to her kitchen and interior ceiling the residence.") Pltfs. Compl., ¶ 4.

viii. *Tiffany Burton, et. al. v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, February 1, 2017) ("On or about the morning of January 23, 2017, after utilizing the NutriBullet Rx, she rinsed all of the blender components and placed the blender cannister beside it to dry. She placed the dry blade assembly lid on the powered base. When she returned home from work at around 5:30 p.m. that same day, she intends to prepare her family dinner. Because the NutriBullet Rx was next to her stove and she need additional space to prepare her family's meal, she picks up [the] base with her left hand and had her right hand near the blade assembly lid. The canister was not "locked in" to the base. As she moved the unit, the NutriBullet Rx blades began to spin suddenly and without notice and directly into her right hand, deeply cutting her right hand, including her right thumb and fingers, and severing her right index finger.") Pltfs. Compl., ¶ 13.

ix. *Mary Obregon. v. Nutribullet, LLC et. al.* (Filed in Superior Court of the State of Washington, Snohomish County, February 3, 2017, removed to the Western District of Washington at Seattle, March 21, 2017) (Plaintiff, Mary Obregon, on August 17, 2016, was using her Nutribullet Magic Bullet for blending. The product had been given to her used, and she had used it on many prior occasions with the awareness that the product blades do not spinning until the product is fully assembled and the product cup is activated and turned into place, such that the plastic cup tabs depress the activator slots that trigger the

motor on the device. Unbeknownst to Ms. Obregon, two of the plastic tabs of the blender cup had broken off and lodged in the activator slots. Ms. Obregon plugged in the product with the expectation that the blender would do nothing until fully assembled, as it had operated in the past. On the occasion that is subject to of this suit, Mr. Obregon plugged the blender in, and the blades began to spin and caught her left thumb, causing serve injury.") Pltfs. Compl., ¶ 3.

x.   *Melba Anderson v. Nutribullet, LLC as entity of Nutribullet* (Filed in the Judicial District of Harris County, Texas, April 6, 2017, removed to the Southern District of Texas, Houston Division June 23, 2017) (" On or about April 6, 2015, MELBA ANDERSON was in her kitchen, and while using the NUTRIBULLET for the purpose and in a manner in which it was intended to be used. MELBA ANDERSON made an attempt to turn off the NUTRIBULLET by switching the power button off and then unplugging the product from the wall and the content inside of the NUTRIBULLET exploded, suddenly and without warning. The built-up pressure of the contents inside the NUTRIBULLET caused the substance to expel out on MELBA ANDERSON, injuring and burning MELBA ANDERSON, as hereinafter described.") Pltfs. Compl., ¶ 9.

xi.   *Yanhu Yi v. Nutribullet, LLC, et.al.* (Filed in the Southern District of Texas, Houston Division, April 6, 2017) ("On September 29, 2015, Y. Yi was using the blender, when the blender began to emit smoke and exploded, causing hot liquids to severely burn her upper body and further causing property damage to her kitchen and interior ceiling the residence.") Pltfs. Compl., ¶ 14.

xii.   *Shournett Brown v. Capital Brands, LLC, et.al.* (Filed in the Southern District of New York, October 20, 2017) ("That on February 3, 2015, while the plaintiff, SHORNETT BROWN, was using the food processing machine manufactured, distributed, and/or sold by the above named defendants, she was caused to suffer and sustain severe bodily injures.") Pltfs. Compl., ¶ 30.

xiii.   *Luisa Burgos v. Alchemy World, Inc., et. al.* (Filed in the Circuit Court of Cook County, Illinois, November 16, 2017. removed to the Northern District of Illinois, December 13, 2017) ("That on November 20, 2015, Plaintiff LUISA BURGOS was injured when the Nutribullet exploded.") Pltfs. Compl., ¶ 10.

xiv.   *Johana Suarez v. Nutribullet, LLC, et.al.* (Filed in the Superior Court of California, Los Angeles County) ("As Plaintiff JOHANA SUAREZ first began to unlock the canister from the base, the canister shot off of, and separated from, the blade assembly, which remained attached to the base. The now uncovered blade assembly continued to spin. As the canister flew off the base, the contents of the canister splashed onto Plaintiff JOHANA SUAREZ's arms and torso, among other body parts, causing severe third degree burn injuries and permanent scarring.") Pltfs. Compl., ¶¶ 22, 23.

xv. *Michael Lesure, v. Homeland Housewares, LLC.* (Filed in the Supreme Court of the State of New York, County of Kings, December 28, 2017, removed to the Eastern District of New York, May 22, 2018) (On or about December 28, 2014, "the blended food products exploded, causing scalding hot liquid onto plaintiff's face, arms and body, thereby causing the plaintiff, MICHAEL LESURE, to sustain serious, severe and permanent personal injuries.") Pltfs. Compl., ¶¶ 48

xvi. *Harjit Thandi v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, January 24, 2018) ("On or about the morning of July 11, 2016, the MagicBullet owned and operated by Plaintiff malfunctioned, with the canister becoming dislodged from the base. Even though the canister had dislodged from the base, the plastic tabs on the assembly became locked on to the power base, allowing the blades to continue operating.") Pltfs. Compl., ¶ 12.

xvii. *Michael Walker v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, January 24, 2018) ("On June 1, 2017, Plaintiff was using the NutriBullet 900 Series to prepare an elixir consisting of ginger, onion, garlic, turmeric powder and parsley. All of the contents were room temperature before they were placed in the blender. Plaintiff had been using the NutriBullet 900 Series blender for almost a year to make this same drink without incident. On June 1, 2017, however, unbeknownst to him, the NutriBullet 900 Series blender was hyper-heating the contents of the canister while it was being blended. After blending, Plaintiff removed the connected canister and assembly blade from the base. When Plaintiff turned over the canister and assembly blade with intentions to unscrew it, the canister and assembly blade suddenly, and without warning, exploded directly into Plaintiff's face, spraying the now scalding drink contents directly into his face, causing severe, immediate burns.") Pltfs. Compl., ¶ 14.

xviii. *Gabriela Lopez v. Homeland Housewares, LLC, et.al.* (Filed in the Superior Court of Arizona, County of Maricopa, February 8, 2018, removed to the District of Arizona, March 19, 2018) )" On October 16, 2017, the Product while being used by Plaintiff within its intended use, exploded sending scorching hot liquid onto Plaintiff's skin causing serve burns and excruciating pain.") Pltfs. Compl., ¶ 12.

xix. *Fabiana Nishioka v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, March 22, 2018) ("On June 5, 2017, Plaintiff was preparing hummus, consisting of chickpeas, garlic and lime. All of the ingredients were room temperature. Plaintiff added all of the contents into the NutriBullet canister, affixed the blade assembly to the canister and then the canister/blade assembly to the base to engage and operate the Nutribullet Pro 900 blender. The blender was operated for a brief and reasonable amount of time, approximately one minute, in an effort to blend the mixture. Unbeknownst to Plaintiff, the contents of the blender were hyper-heating in

the encapsulated canister/blade assembly. After her normal operation, Plaintiff twisted and disengaged the canister/blade assembly from the base of the blender and flipped over the canister/blade assembly in order to unthread/unscrew the canister from the blade assembly. Before Plaintiff could even attempt to unthread/unscrew the canister from the blade assembly, the blade assembly exploded from the canister, spraying the now scalding contents of the canister onto her body, including her face, neck and chest. Due to the intense pain and burning, Plaintiff immediately went into shock.") Pltfs. Compl., ¶ 12.

xx.   *Samantha Beverage v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, March 23, 2018) ("On April 4, 2016, Plaintiff was preparing hot fudge for her family. She melted chocolate chips, sugar and milk on the stove top. Plaintiff added all of the contents into the NutriBullet canister, affixed the blade assembly to the canister and then the canister/blade assembly to the base to engage and operate the Nutribullet blender. The blender was operated for a brief and reasonable amount of time, approximately one minute, in an effort to blend the mixture. Unbeknownst to Plaintiff, the contents of the blender were hyper-heating in the encapsulated canister/blade assembly. After her normal operation, Plaintiff twisted and disengaged the canister/blade assembly from the base of the blender and flipped over the canister/blade assembly in order to unthread/unscrew the canister from the blade assembly. As Plaintiff began to unthread/unscrew the canister from the blade assembly, the blade assembly exploded from the canister, spraying the now scalding contents of the canister onto her face. Due to the intense pain and burning, Plaintiff immediately went into shock.") Pltfs. Compl., ¶ 14.

xxi.   *Malvis Cristal Sanchez, et. al. v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, April 10, 2018) ("On April 20, 2017, Plaintiff was using the NutriBullet Rx in the kitchen of her home to prepare refried beans for her family's meal. Her niece, a minor, was present with her in the kitchen. The cooked bean was room temperature prior to being placed into the NutriBullet Rx blender. Plaintiff blended the beans for about a minute. Unbeknownst to her, the NutriBullet Rx Blender was hyper-heating the contents of the canister. After Plaintiff removed the canister, with the blade assembly attached, from the base, she attempted to unscrew the canister from the assembly blade. Suddenly and without warning, the NutriBullet Rx exploded, with the blade assembly flying from the base, causing the now scalding bean to project directly into her face, chest and arms. Due to the intense pain and burning, Plaintiff immediately went into shock. Her niece called 911 to seek medical treatment for her aunt.") Pltfs. Compl., ¶ 14.

xxii.   *Nadine Elaine Guilbeaux v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, April 11, 2018) (On April 28, 2017 at about 5:00 a.m., Plaintiff was using the NutriBullet blender to prepare her morning smoothie consisting of kale, spinach, blueberries, strawberries and cool water. Plaintiff prepared the smoothie contents in the NutriBullet

cannister the night before and placed the canister in her refrigerator. That morning, she removed the cold, canister containing fruits and vegetables from her refrigerator, added cool water, and then affixed the blade assembly to the canister. Plaintiff made this smoothie the same way at least fifty (50) times prior to April 28, 2017. Plaintiff then affixed the canister and blade assembly to the base and began blending. Unbeknownst to her, the NutriBullet blender was hyper-heating the contents of the canister. After Plaintiff removed the canister from the blade assembly attached, from the base, she attempted to unscrew the canister from the assembly blade. Suddenly and without warning, the NutriBullet exploded, with the blade assembly flying from the base, causing the now scalding fruit smoothie contents to project directly into her chest and arms. Due to the intense pain and burning, Plaintiff immediately went into shock.") Pltfs. Compl., ¶ 14.

xxiii.  *Nilcincia D'Silva, et. al. v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, May 8, 2018) ("On August 24, 2016, Plaintiff was using the NutriBullet in the kitchen of her home to make yucca soup. Plaintiff blended the ingredients for about a minute. Unbeknownst to her, the contents of the canister were heating and creating pressure during the blending operation. As Plaintiff began to unscrew the blade assembly from the canister, there blade assembly exploded away from the canister and there was an eruption of the contents of the canister. The now extremely hot contents sprayed all over her face, neck, and arms, causing painful and serious second-degree burns.") Pltfs. Compl., ¶ 14.

xxiv.  *Erin Gwillim, et. al. v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, May 8, 2018) ("On May 19, 2016, Plaintiff was using the NutriBullet 900 in the kitchen of her home to prepare "Curried Carrot Soup." The recipe she used came from the Recipe Book that accompanied her machine. Plaintiff placed cooked, room temperature carrots, ginger, garlic, salt and pepper in the canister as called for by the recipe, along with liquid, filling the large-cup to less than the fill-line. Plaintiff operated the blender for approximately 10 to 30 seconds by pushing down on the canister. Unbeknownst to her, the NutriBullet 900 was hyper-heating the contents of the canister. The canister suddenly and without water exploded off of the base and blade assembly, hitting Plaintiff forcefully in the head and spraying the now scalding contents of the canister onto her face, neck, chest and arms. Due to the intense pain and burning, Plaintiff immediately went into shock.") Pltfs. Compl., ¶ 14.

xxv.  *Yunaisy Lendian, et. al. v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, May 10, 2018) ("On the morning October 28, 2017, Plaintiff was using the NutriBullet to puree sweet potatoes to use as baby food for her child. Plaintiff blended the ingredients for approximately 45 seconds. As the blender ran, the friction and resulting heat from the rapidly spinning blades caused the pressure in the canister to build up. After Plaintiff

finished blending, she proceeding to remove the canister and attached blade assembly from the base. She began to disengage the canister from the blade assembly, the blade assembly exploded off the canister, spraying the unexpectedly heated contents onto her body, causing severe burns to her face, neck, shoulders, chest and arms.") Pltfs. Compl., ¶ 13.

xxvi.    *Karen Sullivan, et. al. v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, May 10, 2018) ("On June 14, 2016, Plaintiff was [using] the NutriBullet 600 in the kitchen of her home to prepare a smoothie comprised of apple, pear, banana, spinach, frozen blueberries, coconut water and some ice. All contents were cold. Plaintiff place [t]he ingredients in the canister, affixed the assembly blade and place canister/assembly blade on the base. Plaintiff operated the NutriBullet 600 for approximately 10 to 20 second when the canister exploded off the assembly blade and base. The canister struck her coffee machine which was to the right of the blender and knocked it off the countertop. The force of the explosion caused the base with the affixed assembly blade to tip over, with the assembly blade facing the wall. When she picked up the pickup [sic] the base, with the affixed assembly blade, with the intent of placing it upright on her counter, her hands came into contact with the unexpectedly spinning and exposed blades. She felt immediate pain as she observed her flesh and blood spray across the kitchen as her left index finger was sliced off. Plaintiff was home alone at the time of the incident and was immediately in shock.") Pltfs. Compl., ¶ 14.

xxvii.   *Marie Jenkins v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, June 18, 2018) ("On July 14, 2016, Plaintiff was using the NutriBullet to make a smoothie. Plaintiff blended the ingredients until the Nutribullet Rx automatically turned off. As the blender ran, the friction and resulting heat from the rapidly spinning blades caused the pressure in the canister to build up. Plaintiff removed the canister from the motor base. Plaintiff began to unscrew the blade assembly from the canister. As Plaintiff removed the blade assembly from the canister, the canister projected upwards toward the ceiling while the blade assembly remained in her hand. The contents of the canister erupted all over Plaintiff's body, specifically her chest, neck, face, and right eye, causing serious burn injuries.") Pltfs. Compl., ¶ 3.

xxviii.  *Minerva Gonzalez v. Nutribullet, LLC, et.al.* (Filed in the Superior Court of New Jersey, Hudson County, June 21, 2018, removed to the District of New Jersey July 20, 2018) ("On September 29, 2017, the Plaintiff was using a Nutribullet, LLC blender in a reasonable, prudent and responsible manner when it erupted spewing a large amount of scaling hot liquid onto the Plaintiff.") Pltfs. Compl., ¶ 3.

xxix.    *Elizabeth Flack v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, July 3, 2018) ("On July 10, 2016, Plaintiff was using the NutriBullet to blend water and cut pieces of lemon. Plaintiff blended

the ingredients for only a couple seconds when almost immediately, the canister separated from the blade assembly leaving the blades exposed, which severely cut her hand.") Pltfs. Compl., ¶ 13.

xxx.    *Glenn Gelder v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, July 3, 2018) ("On July 30, 2016, Plaintiff was using the NutriBullet to chop dry ice for use in making homemade ice cream. Plaintiff ran the blender, containing the dry ice, for approximately 10 seconds. As the blender ran, the friction and resulting heat from the rapidly spinning blades caused the pressure in the canister to build up. Plaintiff's right hand was on the side of the canister when, without warning, the canister shot off the blade assembly. As the canister shot off the blade assembly, Plaintiff's right hand, no longer resting against the canister, moved down and forward into to still-spinning blades of the blender. The blade struck Plaintiff's hand with such force that it split the bone in his middle finger, and severely lacerated that same finger. Plaintiff had profuse bleeding from the laceration. Plaintiff's injuries will likely cause lifelong functional limitations and pain.") Pltfs. Compl., ¶ 13.

xxxi.   *Denise Sandoval, et. al. v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, July 11, 2018) ("On August 1, 2016, Plaintiff was using the NutriBullet to blend approximately four to five small slides of pineapple and some sugar to add to her drinking water. The pineapple, sugar and water were all room temperature. She had run the blender for a reasonable amount of time, less than sixty (60) seconds. As the blender ran, the friction and resulting heat from the rapidly spinning blades caused the pressure in the canister to build up. Suddenly and without warning, the canister and blade assembly exploded off the base causing the contents of the canister to spray onto Plaintiff and propelling the canister and blade assembly into Plaintiff's body, causing Plaintiff a severe laceration of her right wrist.") Pltfs. Compl., ¶ 13.

xxxii.  *Gabriela Hanchi, et. al. v. Nutribullet, LLC et. al.* (Filed in the Supreme Court of the State of New York, County of Queens, July 31, 2018, removed to the Eastern District of New York, August 22, 2018) ("On or about March 11, 2017, plaintiff GABRIELLA HANCHI, following a thorough review of the directions contained on said product, place a mixture of room temperature Quaker Oatmeal, milk and 2-3 tablespoons of Domino sugar into the Magic Bullet/NutriBullet Model 900 Series container for blending, filled the container to the "MAX" line, as she had done on numerous other occasions, and screwed on the blade. Said plaintiff then attached the container with the blade onto the base, and turned it on by pushing down and turning, and let it run for 30-40 seconds. Said plaintiff then stopped the Magic Bullet/NutriBullet by turning it, removed the container from the base; and when said plaintiff started to open the container the contents exploded out causing scalding hot liquid [sic] onto said plaintiff's face, right arm, upper chest, body and into her

eyes causing sever burn injuries to plaintiff as herein set forth.") Pltfs. Compl., ¶ 8.

xxxiii.  *Gena Laielli v. Nutribullet, LLC et. al.* (Filed in the District of New Jersey, August 10, 2018) ("On February 26, 2018, Plaintiff Gena Laielli was using her Nutribullet to puree room temperature and cold food for her four-year-old daughter, who was required to eat with the assistance of a feeding tube for most of her life, when the subject pressurized Nutribullet exploded and caused burns to Plaintiff's chest and hand.") Pltfs. Compl., ¶ 8.

xxxiv.  *Hope Edge v. Nutribullet, LLC, et. al.* (Filed in the Superior Court Division of Mecklenburg County, North Carolina, August 21, 2018, removed to the Western District of North Carolina, Charlotte Division, September 25, 2018) ("The defective NutriBullet purchased and used by Plaintiff caused a severe laceration to her right hand, which resulted in permanent personal injuries.") Pltfs. Compl., ¶ 11.

xxxv.  *Yomayra Estefany v. Capital Brands, LLC et. al.* (Filed in the District of New Jersey, August 28, 2018) ("On July 2, 2918, Plaintiff, YOMAYRA ESTEFANY, was using the Nutribullet in the manner in which it was intended. Thereafter, the blender became hot, and the blended contents of the Nutribullet, which were room temperature when placed inside, exploded, causing scalding hot liquid to spew and scorch her face and body; and the blade detached and cut her, causing severe injuries to Plaintiff including burns to her chest, arms and face, requiring her to seek medical treatment.") Pltfs. Compl., ¶ 13.

xxxvi.  *Naccole Guinn v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, October 5, 2018) ("On January 28, 2018, Plaintiff was using the NutriBullet to blend a bone broth drink consisting of bone broth protein powder, dandelion tea, coconut milk, cinnamon powder, and clove powder. Plaintiff blended the ingredients for a brief and reasonable amount of time. As the blender ran, the friction and resulting heat from the rapidly spinning blades caused the pressure in the canister to build up. As Plaintiff began to disengage the canister from the base, the canister shot off the base and Plaintiff's hands went into the blades, causing severe lacerations to her fingers.") Pltfs. Compl., ¶ 13.

xxxvii.  *Carmen Acevedo v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, October 10, 2018) ("On August 25, 2017, Plaintiff was using the NutriBullet to blend baby food consisting of boiled potatoes, yucca, squash and water. Plaintiff blended the ingredients for a brief and reasonable amount of time. As the blender ran, the friction and resulting heat from the rapidly spinning blades caused the pressure in the canister to build up. As the plaintiff attempted to disengage the cannister from the base,

the device exploded sending scalding hot contents all over the Plaintiff's face, chest, and right arm, causing severe burns.") Pltfs. Compl., ¶ 13.

xxxviii. *Bruce Bramblett v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, October 10, 2018) ("On May 20, 2018, Plaintiff was using the NutriBullet to blend was cleaning his machine with water. Plaintiff blended the ingredients for a brief and reasonable amount of time. As the blender ran, the friction and resulting heat from the rapidly spinning blades caused the pressure in the canister to build up. While her hand was one the machine, the cup exploded from the blade assembly, causing severe lacerations to his right hand.") Pltfs. Compl., ¶ 13.

xxxix. *Nina Talavera, et. al. v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, October 11, 2018) ("13. On February 16, 2017, Plaintiff was using the NutriBullet to blend lemonade with ice, calamansi lemon juice, water and sugar. Plaintiff blended the ingredients for a brief and reasonable amount of time. As the blender ran, the friction and resulting heat from the rapidly spinning blades caused the pressure in the canister to build up. While her hand was on the machine, the canister exploded off the base, and Plaintiff's hand went into the blades, causing lacerations to her right hand.") Pltfs. Compl., ¶ 13.

xl. *Humera Aslam, et. al. v. Nutribullet, LLC et. al.* (Filed in the Central District of California, Western Division, December 7, 2018) ("On December 8, 2016, Plaintiff was using the NutriBullet to blend cooked oatmeal for her six-month old daughter. The oatmeal was allowed to cool to room temperature, safe for her infant to eat and touch. Plaintiff placed the cooked oatmeal in the blender and ran it for approximately 15-20 seconds. As the blender ran, the friction and resulting heat from the rapidly spinning blades caused the pressure in the canister to build up. Plaintiff removed the combined canister and blade assembly from the motor base. Plaintiff began to unscrew the canister from the blade assembly. As she began to unscrew the canister from the blade assembly, the blade assembly rocketed away from the canister and the now scalding hot contents erupted out of the canister all over Plaintiff's face and body.") Pltfs. Compl., ¶ 13.

xli. *Jennifer Defelice v. Nutribullet, LLC et. al*. (Filed in the Central District of California, Western Division, December 26, 2018) ("On December 30, 2016, Plaintiff was using the NutriBullet to prepare a puree consisting of bananas and water. Plaintiff blended the ingredients for a brief and reasonable amount of time. As the blender ran, the friction and resulting heat from the rapidly spinning blades caused the pressure in the canister to build up. As the plaintiff attempted to disengage the cannister from the base, the device exploded sending scalding hot contents all over the Plaintiff's face, chest, and right arm, causing severe burns.") Pltfs. Compl., ¶ 13.

xlii.  *Casey Drader, et. al. v. Nutribullet, LLC et. al.* (Filed in the Northern District of New York, January 9, 2019) (On July 12, 2017, plaintiff used the NutriBullet as instructed. On that day, plaintiff was attempting to use the NutriBullet to make a protein shake with eggs, protein powder, blueberries and water. During this time, once the said ingredients were sealed in the vessel, plaintiff placed the vessel on the power base, twisted it, and began blending his drink. After about twenty (20) seconds of blending, the vessel, due to excessive pressure, unsealed and the cup exploded off the extractor blade with the cup's plastic tabs breaking and remaining in the activation switches on the power base. The breaking of the tabs in the activation switches kept the blender's electrical circuit closed and the extractor blade spinning. The power base and spinning extractor blade tipped toward plaintiff Casey Drader. Plaintiff used his right hand reactively to stabilize the blender. There and then, the extractor blade caught plaintiff's right index finger and right middle finger, tearing into both.") Pltfs. Compl., ¶¶ 26 - 31.

c.  A class action lawsuit was filed on July 2, 2018 in the in the Central District of California, Western Division involving at least 100 class members seeking a refund of the price paid for their defective and dangerous blenders. The lawsuit also referred to the personal injuries caused by the product. That case is entitled *Deveta White, on behalf of herself and other similarly situated v. Nutribullet, LLC.*

49.   As a direct and proximate result of Defendants intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous NutriBullet blender, which resulted in significant and painful bodily injuries.

50.   Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendants' NutriBullet blender as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

## COUNT I
## STRICT LIABILITY

51.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

52.     At the time of Plaintiff's injuries, Defendants NutriBullet blenders were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

53.     Defendants NutriBullet blenders were in the same or substantially similar condition as when they left the possession of Defendants.

54.     Plaintiff did not misuse or materially alter the NutriBullet blender.

55.     The NutriBullet blenders did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

56.     Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the NutriBullet blenders safe. Specifically:

   a.     The NutriBullet blenders designed, manufactured, sold, and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

   b.     The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

   c.     Defendants failed to properly market, design, manufacture, distribute, supply, and sell the NutriBullet blenders, despite having extensive knowledge that the aforementioned injuries could and did occur;

   d.     Defendants failed to warn and place adequate warnings and instructions on the NutriBullet blenders;

   e.     Defendants failed to adequately test the NutriBullet blenders; and

   f.     Defendants failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

25

57.     Defendants' actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II
## NEGLIGENCE

58.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

59.     Defendants has a duty of reasonable care to design, manufacture, market, and sell non-defective NutriBullet blenders that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

60.     Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its NutriBullet blenders in that Defendants knew or should have known that said NutriBullet blenders created a high risk of unreasonable harm to the Plaintiff and consumers alike.

61.     Defendants negligent in the design, manufacture, advertising, warning, marketing and sale of its NutriBullet blenders in that, among other things, they:

    a.     Failed to use due care in designing and manufacturing the NutriBullet blenders to avoid the aforementioned risks to individuals;

    b.     Placed an unsafe product into the stream of commerce;

    c.     Aggressively over-promoted and marketed its NutriBullet blenders through television, social media, and other advertising outlets; and

    d.     Were otherwise careless or negligent.

62.     Even though Defendants knew or should have known of the aforementioned defects, Defendants continued to market (and continue to do so) its NutriBullet blenders to the general public.

        **WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III
## <u>BREACH OF EXPRESS WARRANTY</u>

63.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

64.     Defendants expressly warranted that its NutriBullet blenders were safe and effective to members of the consuming public, including Plaintiff. Moreover, Defendants expressly warranted that the NutriBullet blender would be to be "free of defects for one full year".

65.     Members of the consuming public, including consumers such as the Plaintiff were the intended third-party beneficiaries of the warranty.

66.     Defendants' NutriBullet blenders do not conform to this express representation because consumers cannot safely use them in the intended manner without risk of the NutriBullet blenders exploding which may result in physical injury or property damage.

67.     The Plaintiff in this case and/or her family purchased and used the NutriBullet blender with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of blending.

68.     Plaintiff's injuries were the direct and proximate result of Defendants' breach of its express warranties.

        **WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

69.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

70.     Defendants manufactured, supplied, and sold its NutriBullet blenders with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently and safely.

71.     Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

72.     Defendants' NutriBullet blenders were not fit for the particular purpose as a safe means of blending, due to the unreasonable risks of bodily injury associated with their use.

73.     The Plaintiff in this case reasonably relied on Defendants' representations that its NutriBullet blenders were an effective and safe means of blending.

74.     Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

        **WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

75.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

76.     At the time Defendants marketed, distributed and sold its NutriBullet blenders to the Plaintiff in this case, Defendants warranted that its NutriBullet blenders were merchantable and fit for the ordinary purposes for which they were intended.

77.     Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

78.     Defendants' NutriBullet blenders were not merchantable and fit for their ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

79.     The Plaintiff in this case and/or her family purchased and used the NutriBullet blender with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

80.     Defendants' breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants for damages, to which she is entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

a. judgment for Plaintiff and against Defendants;

b. damages to compensate Plaintiff for her injuries, economic losses and pain and suffering sustained as a result of the use of the Defendants' blenders;

c. pre and post judgment interest at the lawful rate;

d. a trial by jury on all issues of the case; and

e. for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully submitted,

**JENNER LAW, P.C.**

Dated: November 12, 2021            */s/ Robert K. Jenner*
                                     Robert K. Jenner (Bar No. 399969)
                                     3600 Clipper Mill Road, Suite 240
                                     Baltimore, Maryland
                                     rjenner@jennerlawfirm.com
                                     Phone: (410) 413-2155
                                     Facsimile: (410) 982-0122

                                     *In association with:*

                                     **JOHNSON BECKER, PLLC**

                                     Michael K. Johnson, Esq.
                                     Kenneth W. Pearson, Esq.
                                     *Pro Hac Vice to be filed*
                                     Adam J. Kress, Esq.
                                     *Pro Hac Vice to be filed*
                                     444 Cedar Street, Suite 1800
                                     St. Paul, MN 55101
                                     Phone: (612) 436-1800
                                     Facsimile: (410) 982-0122
                                     mjohnson@johnsonbecker.com
                                     kpearson@johnsonbecker.com
                                     akress@johnsonbecker.com

                                     ***Attorneys for Plaintiff***